Good morning, Your Honors. Deanna Dotson on behalf of Derek Smith, the appellant. The constitutional issue in this case is whether Mr. Smith received his due process rights to a fair trial. At the outset, this is an emotionally charged case for the members of the jury because the defendant is charged with intentionally or knowingly killing his infant son. The prosecution starts the trial with the opening statement PowerPoint showing several pictures of this newborn infant son with several facts underneath, one of them listing saying only live 54 days. Then a picture of Mr. Smith, a full-length photo of Mr. Smith is shown, and this photo was taken just shortly after Mr. Smith realized that his son's heart had stopped, and most likely he was in shock. Then you see a picture of Mr. Smith further on down with the drop the baby off the balcony. Next you see several pictures of, autopsy pictures of this infant showing injuries and listing several injuries. When the mother testifies, she's one of the first witnesses, she gets up and she says that when the baby was a week old, she says that Mr. Smith said, do you want me to drop the baby off the balcony? Then the court gives an admonition, well you're not supposed to take this for the truth of the matter, but these words are clearly engraved on your mind because now you've seen them and you've heard them twice, so how can you forget them? It's like someone making an objection after words are already out of the mouth of a witness and that objection is sustained, but the juries, they don't forget those words, they're still in their minds. Ms. Dodson, I'm about to fall off my chair. I'm interested by your argument. I think your argument may be a good one in front of a district court, but my worry is what is the standard review for this court? Standard review, your honor, is it could be harmless error. Well no, just a minute. Isn't this a habeas case? Yes. And given that this is a habeas case and we're talking about the threatened to drop the baby over the balcony, isn't there a clear and convincing evidence standard on that? Well my understanding is on the habeas that it's, for trial errors, it's a harmless error review, although you do review the facts de novo on this case, but there's more than just this one statement. Well my worry is this. I cannot really take this on appeal as would be generally the case if I were coming from the district court. We're really looking at this case as if it were, did the Hawaii Supreme Court, in other words, did the Hawaii State Court system do something that was contrary to Supreme Court precedent? And so I'm trying to figure out what you're arguing that the Hawaii Supreme Court ruled contrary to. Let me just add an addition to Judge Smith's statement there, her question, which is we're in the world of AEDPA, anti-terrorism defense, I thought you'd have come here, and that limits our review, correct? Correct, your honor. So as Judge Smith said, you need to show that there was an unreasonable application of clearly established law by the United States Supreme Court within the context of AEDPA. So what is the precedent on which you rely? I'm relying on the precedent set by Chambers versus Mississippi as far as the cumulative effect, because there wasn't just this one statement. There was many errors throughout the presentation. Well, let me try it. We're in federal court, and in order to be here there has to be some violation of the Constitution. So the provision of the Constitution that you say was violated here, given the fact that this is essentially talking about evidentiary rulings, how do we get into federal court? How is the Constitution implicated in this case? He was denied his due process rights to a fair trial by the accumulation of prejudicial evidence. Evidence had inflamed the jury that they couldn't look reasonably and objectively at the evidence because they were already inflamed with what was presented to them, and that is a due process violation of a fair trial. Well, you know, when there is a crime that is not pretty, that is offensive, then the photographs of what hurt will also be offensive. But that doesn't make them inadmissible necessarily, or their admission a violation of due process. So what case, what Supreme Court case is closest to this that the state Supreme Court should have been aware of, and was it when they said that there was no problem in the admission of these photographs? Well, I believe, again, it's a Chambers case because Chambers talks about the cumulative nature of evidence presented, or errors, trial errors that are presented, and when you add them all up, that is what makes the due process violation of a fair trial. Taking one thing by itself, maybe not, but when you look at the accumulation of those errors, then perhaps it had an effect on the jury in being able to make a decision based on the evidence and not based on how they felt emotionally, how these things inflamed their heart. I mean, if you take that statement, if you believe the statement, which you're not supposed to believe it for the truth, but if you believe it and a juror says, if somebody can make a statement like that when their baby is only a week old, then they must be capable of killing their baby. Let's just take that statement for a minute. Okay. Drop the baby. Should I drop the baby? What was it? Should I drop him off the bridge or something for that effect? Off the balcony. Off the balcony. And it was a congested statement. Okay. Is it your contention that that statement was somehow or other improperly admitted at trial, that there was an error in the judge's evidentiary ruling? Yes, it is, but I can't argue really that At the federal court, we can't look at the state court's evidentiary rulings, correct? Correct. Correct. And I know, I mean, the Hawaii Supreme Court said there was no problem with that. Is that right? Well, one of the justices did find that there was a problem, but the majority, yes. But the Hawaii Supreme Court said that it was properly admitted, correct? Correct. Okay. So now you're into federal land, right? Correct. And you want to say that the admission of that statement was so prejudicial that it arises, you know, it constitutes a due process violation, right? Yes. Okay, now what case, what United States Supreme Court case supports that argument? That's what we're trying to get at. Okay, I'm not saying that that statement alone, I'm saying that you have to take a look at all the evidence that was argued that was prejudicial. You have to put it all together, and when you have the total effect of that, you've got evidence. Well, usually when you talk about cumulative error, you talk about there was an error, but that error was insufficient by itself to constitute sufficient prejudice to result in, you know, it wouldn't support Brecht analysis or something like that. Now, I'm trying to find out from you what case supports your proposition that this was constitutional error? Just that statement alone? Just that statement. I think you have to, again, I'm sorry, I don't have a case for just that particular statement, because that was an evidentiary issue, whether to allow it or not. Let me, I think we understand your position on that, but let me ask you about the photograph of the defendant. Normally was it a photograph of the defendant himself that was admitted? Yes. Normally the defendant is sitting in the courtroom, the jury can see him, there's nothing wrong with putting in a photograph of the defendant. What was so terrible about this one? It's not just a photograph by itself, but it's the words that were next to the photograph, and words in the closing argument particularly, that misstated the evidence, that said that he resented the baby, that he, let me get some of the words, that he got angry, that was forced upon him, he was losing his patience, getting angry and frustrated. Those words were not supported by the evidence. Those more described the mother. Let me ask you a question, counselor, because I've sat in a lot of these trials, the prosecutors in closing argument, prosecutors in closing argument say things that they think will help their particular case and help the conviction. They can't go overboard, prosecutorial misconduct, but they can give positions in their statements that would go where they want the evidence to go. It doesn't seem to me that the arguments, if he had the photos or without the photos, the language underneath the photos are the same arguments the prosecutor would have made. And I don't find those to be out of the question as far as to what the prosecutor was trying to prove here. So how does it become then more than just that error I can't correct on habeas? Well, because some of those statements on there were not supported by the evidence, Your Honor. Also, there was in the closing argument, there was in this newborn sweet baby with the words, my father killed me. And that's, I mean, all of this inflames and to me prejudiced the jury to be able to make... That statement wasn't in evidence anymore. That statement was not in evidence, but it was in the closing argument on that picture. But that's exactly what the prosecutor was trying to prove. That's exactly what the prosecutor was trying to say. But it's highly inflammatory, Your Honor. And if you take this all together and take a look at it, the accumulation, it's   No, no, no. Please, you're welcome. Thank you. If you want to add something very briefly in rebuttal, we'll give you a moment. Good morning, judges. May it please the Court, Deputy Prosecuting Attorney Stephen Tsushima, on behalf of the State of Hawaii. In this case, the United States District Court for the District of Hawaii did review three issues raised by Petitioner. They're evidentiary-type issues. One, the admissibility of the statement by Petitioner. That was made seven weeks prior to the death of the child, which was previously brought up. The admissibility of the full-length photograph of Petitioner, which was taken shortly after the use of certain photographs during the State's PowerPoint presentation, both in its opening statement and its closing argument. Now, in denying Petitioner's previous petition, the District Court did review this matter and felt that these alleged evidentiary errors, if at all error, fits squarely into the definition of trial errors rather than structural errors. Well, you know, evidence professors for a long time have been worried about the possible effect of technology in the courtroom, and the use of a PowerPoint presentation in the closing argument with words attributable to this little baby has got to have a powerful effect on the case. Don't you get, just looking at it from a distance, isn't this a little bit of overkill? I would say it did touch upon probably the feelings of the jurors. I don't think it was particularly overly inflammatory or such that the jurors couldn't look at it. I think in the context of which it was made, and I think the prosecutor I think in the context of which the statement was made and when this slide did go up, I think the prosecutor did make it clear that he was emphasizing the injuries of the baby, which was one of the strengths of the State's case during this trial, in that it was kind of I guess a colorful way of pointing out the strength of, well, also pointing out one of the other strengths of the State's case. If there had been something, if there had been some kind of description of the injuries in scientific terms so that the jury could see what they actually looked at that might be very useful, but to attribute words to a little baby, if it's the conclusion of what the point of what the State's burden to prove beyond a reasonable doubt, that seems to go a little far. Again, I would say it was a colorful way of emphasizing the strength of the State's case, which was the injuries. I think the prosecutor, it might have been three times he stated I'm not saying this was stated by the baby or that the baby stated this and I think he was trying to make it clear, especially since it was argued away from the presence of the jury that, hey, the baby didn't make this statement, why is this on there? And I believe they even took quotations or quotation marks that were originally on the slide so that it wouldn't look like... They took the quotation marks off. So that it wouldn't look like, quote, the baby said this. Again, I would say this was just a colorful argument rather than an overly inflammatory argument, such that the jury couldn't look at the evidence. The defendant took the stand, and his story of what happened was what? Well, he did give actually varying versions of what happened because he did give a statement to, I believe it was an HPD officer, an EMS individual as well as a statement to a detective later. And I think the varying statements were something to the effect of, to the EMS guy, he had mentioned something about hitting his arm on the doorway and that's how he dropped the baby. I believe to the HPD officer he had mentioned something about the baby kicking and then he accidentally fell off his arm. And then, and it may be confusing which one he said to the detective, but I believe he said something to the effect of the baby fell off the sofa. Well, what did he testify to before the jury? I believe he testified to the accidental dropping from his arm, just carrying him carelessly in his arm. That was one of the points that the state, I think, was emphasizing as one of its strengths is the varying explanations as well as the multiple injuries to the head of the baby. So the strongest part of the state's case was that his story couldn't account for the injuries. So it was really the nature of the injuries. It didn't need any of these quotations, the state didn't need any of these quotations or attributions to the baby or photographs of the defendant or any of that. No, yeah, I would have to agree with that. I would say the evidence in this case was overwhelming and it really was a strong case. And I did talk to the trial prosecutor who was round trader in this case and he did say, yeah, this was a strong case. The evidence was pretty clear. There were multiple injuries to the skull. I think there were multiple fractures. So you were really kind of inviting a habeas case, weren't you, when you put in all these photographs that weren't really necessary or the quotations and captions on the photographs that weren't necessary? I didn't. I'm just saying you generically. Let me ask you a question, Counselor. For you, what is the standard of review for a cumulative Sixth Amendment violation? I would say as long as the violation wasn't such that it affected the defendant's right to a fair trial, then it does still fall under the harmless error standard, which is what generally the trial errors are reviewed under. And as I've looked at the Sixth Amendment violations then that we're really looking at, because Counsel's now focusing on the cumulative effect, so you're suggesting then my review of that would be, is it a harmless error? Correct. And I would note that the Supreme Court did note that in unusual cases, there could be trial errors that would equate to structural error, and therefore immediately reversible based on... But those have been total deprivation of counsel, biased judge, unlawful exclusion of a person of the defendant's race from the jury, denial of the right to self-representation, violation of a public right to trial, those things, which this does not meet in your view. Exactly. I would agree with that. I would say something that was highly egregious or seen as some kind of purposeful violation of otherwise inadmissible evidence that the prosecutor is trying to force into evidence, I would think something of that nature, possibly in an unusual case and argued in a highly improper fashion, I think could possibly fall under that ambit. But looking at the prior cases of what was listed as I don't think this case... So this is bad, but not bad enough. Exactly. That would fall. And I don't think on the evidence here or the facts on this case that would come anywhere close to that. Just to follow up on Judge Schroeder's question earlier, I gather... Is this becoming more common for the prosecuting attorneys to appreciate powerful presentations? Yeah, it is. Especially in this state. Our prosecutor highly encourages it for us to use PowerPoints in our presentations. I was on the U.S. District Court in Los Angeles for six years and I only saw one real effective PowerPoint presentation in a very complex patent case that I've never seen. Yeah, it is becoming more commonplace. He does feel that's more interesting for the jurors, I guess, and more persuasive. Keeps them, I guess, more locked in to the argument. Any further questions? None. Okay. Thank you, Judge. Do you wish to add anything? Yes. Thank you, Honor. Estelle v. McGuire does say habeas review is whether the state proceeding satisfied due process, not whether there was a violation of state evidentiary rule. The evidence from the... You wrote for the defendant in that case and the Supreme Court told us we were wrong. The evidence from the autopsy, there were significant injuries. The only problem with that evidence, there was no evidence to show that the defendant is the one that actually did those. You know, that he was the one that... Well, but just a minute. The expert said, based on what happened in this particular situation and the injuries that occurred, it couldn't have occurred the way the defendant said it occurred when he was at trial. And he had three different explanations of why it occurred the way it did. So that... Well, it's not... This is a very troubling case because when you read the transcripts and you read the evidence that was presented, to me, there were too many questions. I couldn't address those because I'm limited to the certificate of appealability issues, but to me, his fundamental rights were violated. He did not have a fair trial and he should have another chance to have this prejudicial evidence excluded and have a fair trial. Thank you, Your Honor. The case just argued is submitted for decision. And we'll hear the next case for argument, which is
judges: Schroeder, Paez, Smith